PAGE (GALPIN v.). See Cases Nos. 5.205 and 5,206.

PAGE (HOPKIRK v.). See Case No. 6,697.

## Case No. 10,663.

PAGE et al. v. HUBBARD et al.

[1 Spr. 335; [1] 19 Law Rep. 607.]

District Court, D. Massachusetts. Jan., 1857.

MARITIME LIEN—MATERIALS FURNISHED—NOTE TAKEN—PAYMENT BY NOTE.

1. A lien for materials furnished to a vessel built in Massachusetts, is not lost by the creditors' taking the debtor's negotiable promissory note, which is produced at the hearing, and offered to be cancelled.

[Cited in Carter v. The Byzantium, Case No. 2,473; The Kimball, 3 Wall. (70 U. S.) 46; The Napoleon, Case No. 10,011.]

2. How far the giving of a negotiable promissory note for a pre-existing debt is, by the law of Massachusetts, deemed payment of such debt.

[Cited in The Helen M. Pierce, Case No. 6,-332; The Napoleon, Id. 10,011.]

Certain questions in this case were, by agreement of parties, and the sanction of the court of insolvency, submitted to the arbitration of Judge Sprague, of the United States district court.

J. A. Andrew, for plaintiff.

P. W. Chandler, for defendant.

SPRAGUE, District Judge. By agreement with the builder, who was also the owner, of the ship Baltic, materials were furnished for, and went into, the construction of that vessel, and were charged in account against the builder. This created a lien upon that ship for the price, by virtue of the Massachusetts statute of 1855, c. 231. [By that statute it is enacted, whenever by virtue of any contract with the owners of any ship money shall be due to any person for materials used in the construction of any ship, such person shall have a lien upon such ship to secure the payment of such debt, which lien shall continue until the debt is satisfied.] [2] Subsequently, the builder gave his two negotiable promissory notes to the creditor, to the amount of $3,500, which are now produced to abide the decision of this case. The creditor gave a receipt for each note, stating that it was received on account. The question is, was the lien lost or displaced to the amount of those notes? The statute says, that the "lien shall continue until the debt is satisfied."

Has this debt been satisfied, within the meaning of the statute? The creditor has received nothing, except another promise of the debtor to pay it. This second promise is, indeed, in writing and negotiable; but it is a promise to pay the same debt. It acknowledges value received, but the only value received was the materials which went into the ship; the debt, therefore, cannot properly be said to be satisfied, merely because there had been two promises by the debtor to pay it,

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [From 19 Law Rep. 607.]

the one by parol, and the other in writing, negotiable. But it is insisted, that by the law of Massachusetts, the taking of a negotiable note of the debtor is a payment of the account, and that the original debt is therefore satisfied, within the meaning of the statute. By the common law, as administered in England, and as it is believed in all the states, except Massachusetts and Maine, the taking of a negotiable note for a pre-existing debt, is not presumed to be payment, but only another promise held as collateral to the first.

The Massachusetts doctrine is different, and this difference has been created, not by any act of the legislature, but by decisions of the courts. It is very desirable that the law of contracts, so far at least as it affects the substantial rights of parties, should be uniform throughout the commercial world. and especially between the states of our Union, so that a creditor shall not lose his debt in a neighboring state, by an act, which, if done in his own, would impair no right.

The Massachusetts decisions, therefore, should be looked at with a disposition to reconcile them with the general commercial doctrine, and so as to create as little difference as a fair construction will admit. Looking at them with this view, I think that the difference may be found to affect the form of the remedy, rather than the substantial rights of the parties. In examining the Massachusetts decisions, we must not regard them as laying down any positive or arbitrary rule, but look carefully at the reasons assigned, and presume that the court did not intend that the doctrine should go farther than the reasons upon which it rests. The earliest reported decisions were pronounced by Chief Justice Parsons, in Thacher v. Dinsmore, 5 Mass. 299, and Maneely v. McGee, 6 Mass. 143, where he says, that this had been the course of decisions for many years. And the reason he assigns is this: that if an action be maintainable on the original account, the debtor may subsequently be sued by an indorsee of the note which had been given therefor, and thus the debtor be compelled to pay the debt twice; and therefore the creditor should sue only on the note; that is, that he should have his remedy for the debt only on the second promise. The case and the reason contemplate the mere substitution of the second promise for the first; and that the remedy would be as effectual upon the latter as upon the former.

The court do not contemplate that the creditor is to lose any right or security; but only that he shall not place his debtor in a situation in which he may be subjected to pay twice. The courts in England and in other states secure this object by requiring the production of the note to be cancelled, when the judgment is rendered on the original promise. Thus the same object is attained by both, though by different modes. But suppose the creditor holds collateral security

for the original debt, and afterwards takes a negotiable note; it is clear, that by the jurisprudence of England and of the other states, the creditor will not thereby lose the benefit of his collateral security, unless such was the intention of the parties; and such intention would not be presumed from the mere fact of taking the negotiable note of the debtor. Is the Massachusetts doctrine different in this respect? I apprehend that it is not, but that the decisions may be fairly reconciled with it. Her courts say, that a negotiable note, given for a pre-existing simple contract debt, is presumed to be payment; but this being only a presumption of fact, may be repelled. They have further decided, that it may be overcome merely by circumstances; that is, by any circumstances that repel the presumption that the parties intended the second promise to be a payment of the first. The courts of Massachusetts adhere, as firmly as those of any other state, to the doctrine that the intention of the parties is to govern. Now, in determining whether the creditor intended that the original contract should be annulled, the fact that he held collateral security for its performance, is very material, and has so been considered by the courts of Massachusetts. And I believe they have nowhere said, that it is not sufficient, of itself, to rebut the presumption that the creditor intended the negotiable note to be a substitute for the original promise, so as to deprive him of his collateral security.

I have met with three cases in which security was held by the creditor. In Fowler v. Bush, 21 Pick. 230, a note payable by instalments being secured by mortgage, the negotiable note of the debtor was taken for the first instalment, and payment thereof indorsed on the original note, and the note and mortgage then sold to a third person. Here, if the first instalment had not been paid, the debtor would have been subject to a penalty, as the creditor might at once enter to foreclose. This and the entry of payment on the note, and the sale thereof then contemplated, were sufficient to show that the parties intended the new note should be payment. So in Huse v. Alexander, 2 Metc. [Mass.] 157, where a third person had given his own note as collateral security, and subsequently the creditor gave time to the debtor, and took his note with new security, the collateral promisor, who was but a surety, was held to be discharged. But in the case of Butts v. Dean, 2 Metc. [Mass.] 76, a debt was due on account; the creditor took security by the bond of a third person, conditioned, if the debt was paid within eighteen months, the bond should be void; afterwards the debtor gave to the creditor his own negotiable note for the amount of the account, bearing the same date with the bond, and the creditor gave him a receipt. It was held that it was not to be presumed that the creditor intended to relinquish his security; and therefore the note was not to be deemed payment of the

original debt. The remarks of Shaw, C. J., in delivering the opinion of the court in the case of Melledge v. Boston Iron Co., 5 Cush. 169, 170, are, so far as they go, in accordance with the views I have here taken.

It is true, that in the case of The Chusan [Case No. 2,717], Judge Story, treating of a case of admiralty lien, speaks of the Massachusetts doctrine as differing from that of New York, in a manner which would indicate that he supposed the lien would be lost by taking a note in Massachusetts, when it would not be lost by the same act in New York. But the contract there was made in New York, and he had no occasion to examine the jurisprudence of Massachusetts. I think the Massachusetts doctrine does not go further than to consider the taking of a negotiable note a substitute for the pre-existing debt, where that would not impair any security of the creditor. And to this extent it is unobjectionable, as it causes no inconvenience to the creditor, and may better protect the debtor. If it materially changed the right of the creditor, I think it would be an unfortunate departure from the general rule of law. I am of opinion that the lien, in this case, was not displaced or impaired by the taking of the notes, and that if the conditions of the statute were complied with, it could, after the expiration of the term of credit, be enforced in the admiralty, by process in rem.

NOTE. In the earliest case decided before the Revolution, and referred to by Chief Justice Parsons, in Thacher v. Dinsmore, 5 Mass. 299, the notes were not produced. In 6 Mass. 146, Parsons, C. J., speaking of the Massachusetts doctrine, says, "there is no inconvenience to the creditor." It does not extend to cases in which the notes taken are not negotiable. Greenwood v. Curtis, Id. 358; Trustees of Ministerial & School Fund v. Kendrick, 12 Me. 381; Edmond v. Caldwell, 15 Me. 340.