CHARLES MOORE & another *vs.* GEORGE E. JACOBS & others.

Middlesex.   November 22, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Mechanic's Lien.*

On a petition to enforce a mechanic's lien, where it is admitted that the petitioner is entitled to enforce his lien and the only question open is whether certain notes given to the petitioner by the person for whom the work was performed, which were not received in payment, were so dealt with by the petitioner that he received benefit from them and therefore that the respondent should be credited with the amount so received by the petitioner, if it appears that the petitioner negotiated the notes and did not take them up until after the filing of his petition, but that afterwards, the maker having become a bankrupt, the petitioner took up the notes and produced them before an auditor to whom the case had been referred and before the court to be cancelled, the petitioner is not required to give credit for the amount represented by the notes.

PETITION, filed December 23, 1898, to establish a mechanic's lien for labor and materials furnished by the petitioners as plumbers upon certain buildings of the respondent Wildes, who was adjudicated a bankrupt in October, 1898, the respondent Jacobs being the owner of the real estate on which the lien was claimed, it having been conveyed to him by Wildes, and the respondent Sprague being the trustee in bankruptcy of Wildes.

In the Superior Court the respondents at first were defaulted. Later the default was removed in accordance with an agreement of the parties by which it was agreed that the petitioners furnished the materials and performed the labor set forth in their petition and at the prices charged, and that the case should be sent to an auditor to determine what credits, if any, should be allowed against the amount claimed by the petitioners, " the investigation to be confined to the questions of payments or credits." After the filing of the auditor's report the case was tried before *Hardy*, J., who found for the petitioners in the sum of $868.75. The respondents alleged exceptions which were sustained by this court in a decision reported in 182 Mass. 482, referred to in the present opinion.

The case again was heard in the Superior Court by *Richardson*, J. on all questions except the issues previously submitted to the

jury. The auditor's report was put in evidence, and Charles Moore, one of the petitioners, testified as a witness.

The respondents asked the judge to rule as follows:

"1. If the petitioners received from the respondent Wildes the notes A and B on account of the demand set forth in the petition, though not in payment or part payment, and if the petitioners indorsed said notes for value to one Basley and said Basley became the owner and holder of said notes, and if from time to time payments were made on account of said notes to said Basley, and finally said notes were combined in one renewal note, given to said Basley, upon which renewal note payments were made and other renewals of the balance given to said Basley, and at the time these proceedings were begun, and at the time Wildes went into bankruptcy said Basley was the owner and holder of the last renewal note, and said Basley had proved said note as his claim against the estate of said Wildes in bankruptcy, then the amount of said notes A and B should be credited on the demand set forth in the petition.

"2. If the respondent Wildes gave the petitioners the note C on account of the demand set forth in the petition, though not in payment or part payment thereof, and if said Wildes paid said note before these proceedings were begun, then the demand set forth in the petition should be credited with the amount of said note C.

"3. If the respondent Wildes gave to the petitioners on account of the demand set forth in this petition, the notes designated D and E, and if the petitioners indorsed said notes D and E for value to one Chipman, and said Chipman became the owner and holder of said notes, and while such owner and holder, said notes were combined in one renewal note, of which renewal note the said Chipman was the owner and holder, and if said renewal note was afterwards split into two notes, and said Chipman was the owner and holder of said two notes at the time these proceedings were begun, and at the time Wildes went into bankruptcy, then the amount of said notes D and E, being the amount of the last renewal note, should be credited upon the demand set forth in this petition.

"4. If the respondent Wildes gave to the petitioners the note F on account of the demand set forth in the petition, and if said

note F was indorsed by the petitioners to said Chipman for value, and at the time these proceedings were begun, and at the time said Wildes went into bankruptcy, the said Chipman was the owner and holder thereof or of the renewal thereof, then the amount of said note should be credited on the demand set forth in the petition.

" 5. On all the evidence the respondents are entitled to have credit for the amount of the notes A, B, C, D, E and F, or the renewals thereof.

" 6. On all the evidence and agreed facts the respondents are entitled to have credit for the amount paid on the notes A, B, C, D, E and F, and the renewals thereof, and for the amount of the notes L, M, N and F prime, less such discount and interest as petitioners may be entitled to."

The judge refused to rule as requested, and made the following rulings and findings:

" 1. I find that the amount for which (without credits) the land stated in the petition is subjected to lien for labor and materials set forth in the petition, amounts to $764.75 (without interest) on account and in part payment of which I find the petitioners have received $120, being made up of note C, referred to in the auditor's report, which was paid by the maker, Wildes, to the petitioners, and also $20 in money, leaving a balance of $644.75, which with interest thereon to the present date, amounts to $860.50.

" 2. I rule as requested by the respondents in the second of their requests for rulings, but decline to rule as requested in the other five requests, excepting as to note C in the fifth and sixth requests, as to which note I gave the fifth and sixth requests."

The judge found for the petitioners, and ordered that a decree be entered establishing the lien for $860.50. The respondents alleged exceptions.

*C. H. Sprague,* for the respondents.

*T. W. Proctor,* for the petitioners.

HAMMOND, J.  It has been established by the verdict of the jury that no one of the six notes A, B, C, D, E and F was received by the petitioners " in payment or part payment of their claim in suit." It is contended however by the respondents that by reason of the subsequent transactions with refer-

ence to these notes, the amount of them should be credited to the respondents on the bill of the petitioners.

No question arises as to note C, because that was paid by Wildes and it has been credited on the account. As to notes A and B, the auditor reports that upon receiving them " the petitioners negotiated and indorsed and delivered them for value to one Basley, who became the owner and holder thereof, and while said Basley was the holder and owner they became due, and the said Wildes gave the said Basley renewals thereof from time to time, which renewals the petitioners indorsed, and the said Wildes made payments to the said Basley on account of said renewals until the amount due on both notes together was reduced to one hundred dollars ($100), for which amount said Wildes gave his note to the said Basley, which last note the petitioners indorsed, and at the time the petition in this lien case was filed, the said Basley was the owner and holder thereof, and said Basley proved said note against the estate of said Wildes in said bankruptcy proceedings." This last note was designated by the auditor as " L." Notes C and D were negotiated for value to one Chipman, and after various renewals and divisions similar to that above described as to notes A and B, finally were transformed into notes M and N, which at the time of the bringing of this petition were in the hands of Chipman as owner. The same general course was taken as to note F, upon which a partial payment was made, the balance finally being represented by note F, which at the time of the filing of this petition was in the hands of Chipman as owner. It does not appear that Basley has received any dividend from the estate of Wildes.

During the renewals and changes above set forth, there was no time when the petitioners were not liable as indorsers upon the outstanding paper, and since the beginning of this suit the notes L, F, M and N, into which (with the exception of note C which was paid by Wildes and the proceeds duly credited on the account), the original notes had become merged, have been paid by the petitioners, who at the hearing before the auditor and before the court, produced them in evidence and offered the same to be cancelled and returned to Wildes.

The respondents rely upon the doctrine of *Morton* v. *Austin,* 12 Cush. 389, 392, namely, that if a lien creditor accepts notes

on a lien account and negotiates them he must take them up before he can effectively institute proceedings to enforce his lien. See also *Davis* v. *Parsons*, 157 Mass. 584, 588, and cases cited. It is to be noted, however, in the case at bar that the question whether the lien can be maintained is not now open to the respondents under the agreement which was filed when the default was taken off. It is to be assumed that the lien was properly filed, and we are of opinion that under that agreement the real question before the Superior Court at this second trial was " whether by reason of [these] subsequent transactions, including the payment of note C and the part payment of some others and the renewals, the petitioners had so far received the benefit as that some credit therefor should be given upon the account." See the report of this same case, 182 Mass. 482, 487. We are of opinion that the rule for which the respondents contend is not to be extended to a case where the issue is like this. Although the petitioners did not take up these notes until after the filing of their petitions, yet they subsequently took them up and produced them before the auditor and the court to be cancelled. Under the circumstances this was enough. They had received no benefit such as to require them to give credit for the amount represented by these notes.

We see no error in the manner in which the court dealt with the question of credits.

*Exceptions overruled.*