# Ala. Connelsville Coal & Coke Co. v. Pitts, Adm'r.

*Action by Employee Against Employer Under § 2590 of Code of 1886.*

1. *Defective works or plant; competent evidence thereof.*—A witness who testifies he is well acquainted with the machinery he was called to testify about, and had much experience in its use, is competent to show that it "was reasonably adapted for the purpose for which it was used," and may state whether or not it was in good repair, if he knew its condition, at the time of accident

[Alabama Connelsville Coal & Coke Co. v. Pitts, Adm'r.]

2. *Contributory negligence of servant.*—A servant who is directed by his superior to perform a service which is of a dangerous character, and is not cautioned by the person giving the command, but is warned by a co-laborer of his danger, and disregarding the caution is injured, cannot recover damages of the master for injuries so received.

3. *Earnings of minor in estimating damages for negligent killing by employer.*—In an action by the personal representative for damages for the death of a minor through the negligence of his employer, the jury, in estimating the damages, should exclude the earnings of the deceased during his minority when it appears. that he lived with and was supported by his father during that time.

APPEAL from Birmingham City Court.
Tried before the Hon. W. W. WILKERSON.

Action by Battise Pitts, as administrator of Peter Pitts, against the Alabama Connellsville Coal & Iron Co., to recover damages for the death of Peter Pitts.

All the facts pertaining to the pleadings and as disclosed in the bill of exceptions are sufficiently stated in the opinion. After the introduction of all the evidence, and after the court had charged the jury on the law applicable to the case, the plaintiff moved for leave to strike count No. 3 from the complaint, and amend count No. 2. The defendant objected to the granting of this motion. The court overruled his objection and granted the motion, and defendant excepted.

The court, at the request of the plaintiff, gave the following charge to the jury: "The master is bound not to expose the servant to dangers of which he knows, or has reason to know, the servant is not aware. He is bound to fully apprise the servant of dangers incident to the business, which he (the employer) ought to know." The defendant excepted to the giving of this charge, and also separately excepted to the refusal of the court to give each of the following charges, as requested by it: (1) "If you believe the evidence, your verdict must be for the defendant under the first count of the complaint." (2) "If you believe the evidence, your verdict must be for the defendant under the second count of the complaint." (3) "If you believe the evidence, your verdict must be for the defendant under the fourth count of the complaint." (4) "If you believe the evidence, your verdict must be for the defendant under the fifth count of the complaint." (5) "If you find from the evidence that the tramway and tipple were adapted to the work expected to be done with them, and were reasonably safe for the ordinary and usual work done on them, then there was no negligence in ordering Peter Pitts to go up on the trestle and

[Alabama Connelsville Coal & Coke Co. v. Pitts, Adm'r.]

help push the cars." (6) "The burden of proof is on the plaintiff to establish by proper evidence that there was a defect in defendant's works, and that Peter Pitts' injuries were directly caused by the defect; and if, after considering all the evidence, you are not reasonably satisfied that there was a defect, and, in addition thereto, that this defect was the direct cause of the injury, your verdict must be for the defendant." (7) "If you find from the evidence that Peter Pitts was directed to help push the car on the tramway, and that he was injured while stooping over the end of the pole, and not in a position required to be assumed by him in pushing or holding back the car, you will find a verdict for the defendant." (8) "If you find from the evidence that the tipple pole flew up and struck Peter Pitts because the two men who were charged with the duty of managing the tram car had negligently failed to put the ring over the end of the pole so as to hold it down, you will find a verdict for the defendant." (9) "If the jury find that the accident was due solely to an unusually heavy load on the car to be handled on the tipple, and the nature of that load, then your verdict must be for the defendant." (10) "The burden of proof is on plaintiff to establish by proper evidence that defendant's servant ordered Peter Pitts to go up on the tramway and help to do the very work which he was doing when injured; and if you are left in doubt, and not reasonably satisfied from the evidence, that defendant's said servant knew that this tipple pole was likely to fly up prematurely when a properly loaded car was placed on the tipple in the usual way, and that under his orders Peter Pitts would reasonably be expected to come in contact with the pole while carrying out his orders, and that said pole did fly up prematurely and injure Pitts while he was in a position required of him in the performance of the duty said servant had directed him to perform, then your verdict must be for the defendant." (11) "Should you get so far as to estimating the amount of damages under the law as I have charged you, in making this estimate as to compensatory damages you will exclude from such calculation, in this case, the earnings and savings of deceased up to the age of 21 years, and in this case only calculate on what is earned and saved after that age."

CHISHOLM & WHALEY, for appellant, cited *Washington & Georgetown R. R. Co. v. McDade*, 135 U. S. 554; *Holland v. Tenn. C. & I. R. R. Co.*, 91 Ala. 452; *M. & O. R. R. Co. v. George*, 11 So. Rep. 153; *Hollins case*, 84 Ala. 133; *L. & N.*

[Alabama Connelsville Coal & Coke Co. v. Pitts, Adm'r.]

*R. R. Co. v. Allen*, 78 Ala. 494; *Thompson v. L. & N. R. R. Co.*, 91 Ala. 501; *L. & N. R. R. v. Hall*, 87 Ala. 719.

SMITH & LOWE, for appellee.  (No brief came to the hands of the reporter.)

STONE, C. J.—This action is brought under the employer's act, § 2590, Code of 1886.  It counts on the negligent and unlawful killing of Peter Pitts, an employe of the appellant corporation.  · The complaint was amended by striking out the third count, and the trial was had on the remaining four counts.  A demurrer was interposed to each of the counts of the complaint, which the City Court overruled; but that ruling is not assigned as error.

The appellant corporation was operating a coal pit.  It had an elevated tramway, erected and operated for the purpose of removing the refuse which was mined with the coal. At the end of the tramway was machinery called a "tipple," used in emptying the refuse from the cars.  The cars on this tramway were moved by hand power, and plaintiff's intestate was employed in this service at the time he suffered the injury which caused his death.  The machinery which operated the tipple is described in the first count of the complaint as follows:  "Plaintiff alleges that said tipple was connected with said track by means of a pole about nine feet in length, one end of which pole was fastened to the tipple, and the other end projected over and along the track, and was held in place by means of an iron ring, or belt, or groove fastened to the track, and placed over the end of the pole; and was so constructed that when the said hand car had reached the tipple, and said ring, or belt or groove was removed from the end of the pole, the said end would go up in the air as the tipple went down."  The negligence of defendant charged in this, the first count, is, that plaintiff's intestate, in what he did, was conforming to orders he was bound to obey, and while so obeying and conforming to orders, "the end of said pole which extended over the track flew up with great violence and struck plaintiff's intestate and injured him so that he died.  And plaintiff alleges that said pole was likely to fly up prematurely, and had often done so before, and the work that plaintiff's intestate was directed to do,  ·  ·  was thereby rendered hazardous and dangerous; and said person in the employment of defendant, to whose orders he was bound to conform, and  ·  ·  did conform, knew that said pole was liable and likely to fly up prematurely and had often done

so before. · · That the injury and death · · were caused by reason of the negligence of the said person, to whose orders plaintiff's intestate was bound to conform and did conform."

The gravamen of the second count is, "that said tramway or trestle became and was in a defective condition, in this, that that part of the tramway or trestle approaching, and next to the tipple, had become and was much lower than the portion nearer the mouth of the mine; · · and by reason of the defect in the condition of the tramway and trestle as aforesaid, the said car went with great force and speed upon said tipple, and caused the same to tip suddenly and violently, and thereby caused a pole which was attached to said tipple · · to fly up and strike plaintiff's intestate," &c.

The 4th count is substantially like the first, with this addition: "Plaintiff alleges that said injury was caused by reason of a defect in the ways, works or machinery, of defendant in this, that no sufficient provision was made to secure the end of said pole, which extended over and along said track. · · And plaintiff alleges that said defect had not been remedied owing to the negligence of the person in the employ of the defendant, and entrusted by the defendant with the duty of seeing that the ways, works and machinery were in proper condition."

The fifth count avers that "the defendant negligently ordered him (plaintiff's intestate) to push and assist in pushing a loaded tram car over a tramway, along and upon a trestle, · · and to place and assist in placing said tram car upon said tipple." This count then alleges how said injury was inflicted, and adds: "And plaintiff alleges that the work which plaintiff was ordered by the defendant to perform was dangerous and hazardous, by reason of the fact that said pole was liable to fly up as aforesaid, and defendant knew that the same was dangerous and hazardous, by reason of the fact that said pole was liable to fly up as aforesaid; and the defendant negligently failed to notify the deceased of the danger."

The case was tried on two pleas, not guilty, and contributory negligence on the part of plaintiff.

The witness Lewis testified that he was well and long acquainted with the use, if not with the construction, of the machinery he was called to testify about. He stated he had had much experience in its use. We think he should have been permitted to testify that the pattern of the tipple employed on the occasion of the injury "was reasonably adapted

for the purpose for which it was used;" and if he knew the condition it was in when the disaster occurred, whether in good repair or the contrary, he could state that.—*Young v. O'Neal*, 57 Ala. 566; *Ga. Pac. Rwy. Co. v. Propst*, 83 Ala. 518; *Blackman v. Collier*, 65 Ala. 311; *Mobile & M. Rwy. Co. v. Blakely*, 59 Ala. 471; *Hames v. Brownlee*, 63 Ala. 277. The City Court erred in excluding this testimony.—*M. & O. R. R. Co. v. George*, 94 Ala. 199.

The drift of the testimony which went before the jury in this case tends to show that plaintiff's intestate was a youth about 19 years old, that he was in the employ of the defendant corporation, and that he was usually employed in work, other than that in which he lost his life. There was an elevated tramway, along which hand cars were employed in removing the refuse from the mine, which extended some 140 feet from a point above the mouth of the pit. At the end of this tramway, and on a line with it, was what is known as a tipple, which moved on an axle. A pole connected with the tipple extended some feet along the tramway, and was fastened to it by a movable ring. This pole, so fastened, kept the tipple in place until the hand car was placed upon it, when, by removing the ring, the pole would fly up, and, by releasing the tipple, cause it to do its work. The first 70 feet of this tramway was nearly horizontal, but from that point to the tipple, it was down grade. The testimony as to the degree of this inclination is not entirely in harmony— some of the witnesses giving it a steeper descent than others do. All the testimony agrees that in descending this down grade to the tipple the hand car moved of its own momentum and rapidly, and that on this occasion the fastening which held the pole in place became detached and the pole flew up prematurely; thus striking intestate on his head and causing his death. There was testimony that on a former occasion a similar, premature flying up of the pole had occurred; but the superintendent or mine boss denied all knowledge or information of such occurrence. A witness for plaintiff had testified that he himself had notified the manager of it. It was proved and not denied that the superintendent or boss directed deceased to assist the hands regularly detailed for the service in placing the car from the platform on the tramway, and it was not claimed, or attempted to be proved, that he warned him of any danger in this service. There was testimony that before starting on the tramway with the hand car, the regular hands in the service cautioned plaintiff's intestate against the pole connected with the tipple; and when on the down grade, within 15

or 20 feet of the end of the tramway each of them told him to "let loose," accompanied with a backward motion of the hand. He did not obey this instruction, but held on to the car, following it up. There was some variation in this part of the testimony, all of which was given by plaintiff's witnesses. One witness testified that he heard the command given to "hold it." This witness was not on the tramway. Another of plaintiff's witnesses testified that this command was given by him, not to intestate, who was at the rear end of the car, but to his regular co-worker who was at one side of it, while he, witness, was at the other, each endeavoring to check the car's motion.

There was no proof tending to show any defect or want of repair of the tipple, the connecting pole, or of the ring which held them in place. The only defect of the ways, works, or machinery charged in the complaint, of which any proof was made, was and is that the down grade of the tram-way was so steep that a heavily loaded car could not be kept under control, while descending it. According to some of the testimony, this defect, and the consequent rapid, uncontrollable movement of a descending, heavily laden car caused the pole or lever to break loose from its fastening, and fly up prematurely. This was the only defect, "in the ways, works, machinery, or plant," which there was any testimony tending to prove. This alleged defect is the gravamen of the second count.

The wrong complained of in the fourth count is, "that no sufficient provision was made to secure the end of said pole." This refers to the lever which held the tripple in place. No proof was made that this appliance was defective in itself.

The fifth count alleges that the work which plaintiff's intestate was commanded to do was "dangerous and hazardous," and "the defendant negligently failed to notify the deceased of the danger." We think the work which plaintiff's intestate was instructed to do was in its nature hazardous, and that in assigning an inexperienced youth to such perilous service, the boss, or person in control should have warned or cautioned him of the danger. If, however, he was sufficiently notified and cautioned by a co-laborer, and heedlessly disregarded such warning, this would leave him without excuse.

We have said that the ruling on demurrer has not been assigned as error. If it were we would hold the first count does not set forth a good cause of action. We make this statement as a guide for another trial, and to prevent the question from coming again upon us.

Allowing amendment of pleadings, while the trial was in progress, in the matter here complained of, was free from error.   3 Brick. Dig. 28, §§ 5 and 7; Code of 1886, § 2833.

There was no testimony before the jury tending to support the fourth count of the complaint, and charge 3 asked by defendant ought to have been given.

Defendant's series of charges requested.   Charge No. 6, is subject to criticism, in two respects.   It employs the words, "direct" and "directly," instead of the appropriate words, proximate and proximately.   This was calculated to mislead the average juror.   But there is a graver fault. The conclusion is too broad.   Its hypothesis, if found to be true, would certainly acquit the defendant of fault, in the matter of defects in the ways, works and machinery; but it would extend no farther.   It would not necessarily exonerate defendant of the charge made in the 5th count, if the jury should find that plaintiff's intestate was assigned to a perilous work, without receiving instructions from some quarter that would be calculated to put him on the lookout.   This would present a question, for the jury, on proper instructions.   But we must not be misunderstood. If intestate received from other employees the notice and warning he should have had from the superintendent or boss, and disregarded it, this left him without excuse.

Charge 8, had no testimony to support its hypothesis, and it was rightly refused for that reason, if for no other.

Charge 9, hypothesises the overload of the tram car as the sole cause of the injury suffered.   There is no count in the complaint based on this alleged fault of defendant, and, hence, no notice was given by the pleadings that a recovery would be sought on this account.   It was not within the issue formed.   This charge ought to have been given.

The legal principles necessary to be consulted in the trial of this case have been many times declared by this Court. *L. & N. R. R. Co. v. Allen*, 78 Ala. 494; *Ga. Pac. Rwy. Co. v. Propst*. 83 Ala. 518; *Ga. Pac. Rwy. Co. v. Davis*, 92 Ala. 300; *M. & O. R. R. Co. v. George*, 94 Ala. 199; 10 So. Rep. 145.   See also *Washington & G. R. R. Co. v. McDade*, 135 U. S. 554.

Charge 11, asked by the defendant, should have been given.   The testimony was without conflict that Peter Pitts was a minor, a member of his father's household, and that the latter supported him and received the wages he earned. *Williams v. S. & N. R. R. Co.*, 91 Ala. 635; 9 So. Rep. 77.

Reversed and remanded.