145 So. 449

**KAMBURIS et al. v. STEARNS, Sheriff, et al.**

3 Div. 29.

Supreme Court of Alabama.

Jan. 12, 1933.

Rehearing Denied March 2, 1933.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellees.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellants.

ANDERSON, Chief Justice.

Pappanastos Bros. filed suit for rent and levied an attachment upon the property, a part of which is here involved. The appellant Kate Kamburis thereafter filed a claim bond and received the property in her custody. During the pendency of the claim suit, part of the property was destroyed by fire while stored in a building, said fire being accidental and through no fault of the claimant. The claim suit resulted in a judgment for the plaintiff. The claimant failed to deliver the property so destroyed as provided by the bond and the sheriff declared the said bond forfeited as provided by section 10378 of the Code of 1923.

Pretermitting the propriety of the remedy by which the question is raised, the one question presented, and ably so by counsel on both sides, is whether or not the destruction of the goods by fire gave the claimant a legal excuse for a failure to deliver it and released her and the sureties on the

claimant's bond. Section 10375 of the Code provides for a claimant's bond and requires that the property be forthcoming for the satisfaction of the judgment or claim of the plaintiff, if it be found liable therefor. Section 10378 provides that if judgment is rendered against the claimant, and he fails to deliver the property to the officer making the levy, and pay the cost of the trial of the right of property within thirty days, if in the circuit court, such officer must indorse the bond forfeited, and execution must be issued against the obligors on the bond for the amount of the plaintiff's judgment. The statute is plain and unambiguous as to the duty of a claimant and the liability of his sureties. "The general rule is that, where a person by his contract charges himself with an obligation possible to be performed, he must perform it, unless its performance is rendered impossible by the act of God, by the law, or by the other party, it being the rule that in case the party desires to be excused from performance in the event of contingencies arising it is his duty to provide therefor in his contract." 13 C. J. page 635. Here, the law fixes the terms of the bond and the claimant could not provide against contingencies in conflict therewith and the only excuse available for a failure to have the property forthcoming is an act of God, the law, or the conduct of the other party.

The unsuccessful claimant in a trial of the right of property does not occupy the position of a bailee for hire. He is, in a sense, an interloper, having obtained possession of the property by giving the claim bond, he becomes the legal custodian, and it is his duty to safely keep it, to be returned if found liable to plaintiff's execution. He has interfered with the process of the creditors and compelled them to let go goods which had been seized to satisfy the debt due them. Wilcox v. Piedmont Co., 98 Ala. 285, 11 So. 779, and cases there cited.

We are quite impressed with the soundness of the opinion of the late Judge Gresham, of the United States Circuit Court, an eminent judge and statesman, in a case in point, and from which we quote:

"The defendants were not prevented from fulfilling their obligation by the act of God, or the conduct of the plaintiff; its fulfillment was not made impossible by law; and the attachment was not dissolved. The sole ground of defense set up in the paragraph of the answer demurred to is that the attached property was destroyed by accidental fire. That was not an act of God, and the court is not called upon to decide what the effect would have been had the fire started by lightning or by some other superhuman agency. The defendants' counsel insists that a delivery bond, executed in an attachment suit, is not an absolute contract for the return of the property on demand or the payment of its value; but that the purpose of the statute is that the defendant shall be permitted to retain possession of the property by giving a bond with surety that he will care for and keep it just as the officer would be required to care for and keep it if it remained in his possession, and that the liability of the latter is that of a bailee for hire only. If property in the custody of an officer under a writ of execution or attachment is lost or damaged while he is exercising that degree of care over it which is required of a bailee for hire, he is not liable. Authorities need not be cited in support of this proposition. But the relation that an officer sustains to property, thus in his custody, is not the relation that a defendant in attachment sustains to his own property after the execution of a delivery bond. * * *

"There is a wide difference between the possession of an officer, who levies on property under a writ of attachment and holds it for a particular purpose, and the possession of a defendant in an attachment suit of his own property after the execution of a delivery bond, and it does not follow that because the possession and liability of the former is that of a bailee for hire only the liability of the latter is the same. If the defendants' counsel are correct, a delivery bond is a mere contract of bailment, and the defendant in the action becomes bailee of his own property." Doggett, Bassett & Hills Co. v. Black, 40 F. 439.

We have examined and considered the many Alabama cases cited in brief of appellants' counsel, and they are not contrary to the present holding, as a delivery was excused because of an act of God, the result of law, or the conduct of the other party. Several of them refer to slaves who died, which was an act of God, or who were emancipated by law, and others where the claimant or defendant was dispossessed by legal process.

The trial court did not err in sustaining the demurrer to the bill of complaint, and the decree of the circuit court is affirmed.

Affirmed.

THOMAS, BROWN, and KNIGHT, JJ., concur.